IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MICHAEL CUSHMAN,<br><br>Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>Defendant. | NO. 8:23-CV-196<br><br>MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFF'S MOTION TO AMEND COMPLAINT |

Plaintiff Michael Cushman has sued his former employer defendant Union Pacific Railroad Company under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* Filing 1. Cushman alleges he is a former member of the now-decertified *Harris* class that sued Union Pacific for violations under the ADA. Filing 1 at 10 (¶¶ 45–46); *Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030 (8th Cir. 2020). Cushman brings two claims under the ADA against Union Pacific alleging disability discrimination due to disparate treatment. Filing 1 at 11–13 (¶¶ 49–63). Union Pacific moved for judgment on the pleadings. Filing 25. Contemporaneously with his response to the Motion for Judgment on the Pleadings, Cushman moved for leave to amend the Complaint, Filing 29, and included a proposed Amended Complaint, Filing 31-1. For the reasons stated below, the Court grants Union Pacific's Motion for Judgment on the Pleadings on the original Complaint and grants Cushman's Motion for Leave to Amend to allow him to file an Amended Complaint within 14 days.

1

## I. INTRODUCTION

### A. Factual Background

For the purposes of Union Pacific's Motion for Judgment on the Pleadings, the Court considers only the allegations in Cushman's original Complaint, Filing 1, and not Cushman's proposed First Amended Complaint, Filing 31-1. *See* NECivR 15.1(c) ("The granting of the motion for leave to amend does not constitute filing the amended pleading. If granted leave to amend, the party must then file the amended pleading."). The Court considers the following nonconclusory allegations as true for the purposes of ruling on this motion. *See Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)). Michael Cushman worked for Union Pacific between February 9, 1999, and August 3, 2015, most recently as a locomotive engineer. Filing 1 at 8 (¶¶ 30–31, 34). On August 3, 2015, Cushman fainted while on the job and was subsequently diagnosed with syncope. Filing 1 at 8 (¶¶ 32–33). Union Pacific immediately removed Cushman from work. Filing 1 at 8 (¶ 34). By November 2015, several of Cushman's personal doctors had cleared him to return to work without restrictions. Filing 1 at 8 (¶ 35).

On December 16, 2015, Union Pacific made a Fitness-For-Duty (FFD) determination that Cushman "require[d] permanent work restrictions for sudden incapacitation risks" and "labeled Cushman as having 'moderate to high' risk of sudden incapacitation." Filing 1 at 8–9 (¶¶ 36–37). No "doctor affiliated with Union Pacific physically examine[d] Cushman." Filing 1 at 9 (¶ 40). Union Pacific then informed Cushman that it "has been unable to identify a reasonable accommodation" that would allow Cushman to continue working. Filing 1 at 9 (¶ 41). Despite this, Cushman alleges that, "[a]t all relevant times, [he] had the requisite skill, experience, education, and other job-related requirements of his position" and "could perform the essential functions of

his position with or without reasonable accommodations." Filing 1 at 11 (¶ 52). Only in 2019 was Cushman permitted to return to work. Filing 1 at 10 (¶ 43). Cushman alleges, "Union Pacific discriminated against Cushman on the basis of disability by, among other things, removing him from service for years because of a disability." Filing 1 at 12 (¶ 55).

Cushman also alleges that he experienced disability discrimination due to Union Pacific's FFD policy. Filing 1 at 12 (¶ 59). The FFD policy applies "to all Union Pacific employees across the country." Filing 1 at 3 (¶ 9). "Fitness for Duty" is defined in Union Pacific's Medical Rules as "[a]bility to medically and functionally (including physical, mental, and/or cognitive function) safely perform the functions of a job, with or without reasonable accommodations and meet medical standards established by regulatory agencies in accordance with federal and/or state laws." Filing 1-1 at 12. The FFD policy requires that "[i]f the employee experiences a [reportable] health event noted in Appendix B, the employee should not report for, or perform, his/her job until Fitness-for-Duty clearance has been provided for such work by [Union Pacific's Health and Medical Services Department (HMS)]." Filing 1-1 at 3. "Reportable health events" include diabetes, a "seizure of any kind," heart attacks, and "[n]ew use of hearing aids." Filing 1-1 at 13 (listing categories of conditions as "Cardiovascular," "Seizure or Loss of Consciousness," "Significant Vision or Hearing Change," "Diabetes Treated with Insulin," and "Severe Sleep Apnea"). The employee must also "[p]rovid[e], upon request, information from the employees [sic] health care provider." Filing 1-1 at 3. After receiving an employee's medical records, HMS "conducts a 'file review' and issues a Fitness-for-Duty determination that the employee is either fit for duty, fit for duty with restrictions, or unfit for duty." Filing 1 at 5 (¶ 17).

HMS relies on the Federal Motor Carrier Safety Administration (FMCSA) 2014 Medical Examiner's Handbook to conduct FFD Evaluations, specifically "to determine which health

3

conditions required work restrictions, which standard restrictions to impose, and how long those restrictions should remain in place." Filing 1 at 6 (¶ 21). Cushman alleges that the Handbook "did not apply to railroad workers, but instead provided non-binding guidance to FMCSA medical examiners intended for use in medical certification of drivers operating a commercial vehicle in interstate commerce." Filing 1 at 6 (¶ 23). He also alleges that, by 2015, HMS "learned" that the Handbook was "outdated" but continued to rely on it in its Medical Rules. Filing 1 at 6 (¶ 25).

### B. Procedural Background

Prior to this suit, Cushman alleges that he was a class member in a class action suit (*Harris*) against Union Pacific alleging disability discrimination under the ADA. Filing 1 at 10 (¶ 46). An Amended Complaint was filed on behalf of the class in the District Court for the Western District of Washington on February 19, 2016. Filing 1 at 10 (¶ 45); *Harris v. Union Pacific R.R. Co.*, No. 16-381 (D. Neb. Feb. 19, 2016), ECF No. 20. The Amended Complaint described the class as:

> Individuals who were removed from service over their objection, and/or suffered another adverse employment action, during their employment with Union Pacific for reasons related to a Fitness-for-Duty evaluation at any time from 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination to the resolution of this action.

Case No. 16-381, ECF No. 20 at 17 (¶ 116). Among the many Counts asserted in the Amended Complaint were a disparate-treatment claim pursuant to 42 U.S.C. § 12112(a) and (b)(6), a disparate-impact claim pursuant to 42 U.S.C. § 12112(b)(6) and (b)(3), an unlawful-medical-inquiries claim pursuant to 42 U.S.C. § 12112(d)(4)(A), and a failure-to-accommodate claim pursuant to 42 U.S.C. § 12112(b)(5)(A). Case No. 16-381, ECF No. 20 at 21–25 (¶¶ 136–163).[1] The case was then transferred to this Court. Case No. 16-381, ECF No. 51 at 3.

---

[1] The plaintiffs in *Harris* brought other claims, *see* Case No. 16-381, ECF No. 20, but only their ADA claims are of interest in Cushman's lawsuit.

The *Harris* plaintiffs sought class certification for their disparate-treatment claim but not on their disparate-impact, unlawful-medical-inquiries, or failure-to-accommodate claims before a different judge of this Court. Case No. 16-381, ECF No. 241 at 22. When seeking certification, the plaintiffs described the class as "[a]ll individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 18, 2014 until the final resolution of this action." Case No. 16-381, ECF No. 240 at 1. The class was certified in February 2019. *See* Case No. 16-381, ECF No. 307; *Harris v. Union Pac. R.R. Co.*, 2020 WL 4504392, at *1 (D. Neb. Aug. 5, 2020). The Eighth Circuit Court of Appeals reversed and decertified the class on March 24, 2020. *Harris*, 953 F.3d 1030. Cushman promptly filed a charge of discrimination with the EEOC on April 10, 2020, and the EEOC issued a right-to-sue letter on April 10, 2023. Filing 1 at 11 (¶ 48). Cushman filed a Complaint against Union Pacific with the Court on May 15, 2023. Filing 1.

Cushman alleges two counts of disability discrimination on disparate-treatment theories under the ADA. Count I asserts a claim under 42 U.S.C. § 12112(a), alleging that "Union Pacific discriminated against Cushman on the basis of disability by, among other things, removing him from service because of a disability." Filing 1 at 12 (¶ 55). Count II asserts a claim under § 12112(b)(6), alleging:

> Union Pacific discriminated against Cushman on the basis of disability by using facially discriminatory qualification standards, employment tests, and/or other selection criteria, as part of its Fitness-For-Duty program and related policies, that are intended to screen out individuals with disabilities, and which did screen out Cushman.

Filing 1 at 13 (¶ 60). In his prayer for relief, Cushman asks for monetary damages and other forms of relief, including an injunction to enjoin Union Pacific's policies. Filing 1 at 13–14.

On June 7, 2023, Union Pacific filed an Answer. Filing 10. On October 18, 2023, Union Pacific filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), seeking dismissal of the Complaint in its entirety for failure to allege sufficient facts upon which relief can be granted. Filing 25. On November 8, 2023, Cushman filed a Motion to Amend Complaint. Filing 29.

## II.  Analysis

### A.  Motion for Judgment on the Pleadings

*1.  Judgment on the Pleadings Standards*

Rule 12(c) of the Federal Rules of Civil Procedure provides, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "As a general rule, a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a 12(b)(6) motion to dismiss." *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1056 (8th Cir. 2018) (quoting *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010)). Rule 12(h)(2)(B) expressly recognizes that "[f]ailure to state a claim upon which relief can be granted," which is a defense that may be raised by pre-answer motion under Rule 12(b)(6), also "may be raised . . . by a motion under Rule 12(c)." Indeed, the Eighth Circuit Court of Appeals has recognized "that the distinction between a Rule 12(c) and a Rule 12(b)(6) motion is 'purely formal.'" *Sletten & Brettin Orthodontics, LLC v. Cont'l Cas. Co.*, 782 F.3d 931, 934 (8th Cir. 2015) (quoting *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990)). Specifically, "a Rule 12(b)(6) motion cannot be filed after an answer has been submitted," but pursuant to Rule 12(h)(2), a motion for failure to state a claim upon which relief can be granted can be filed under Rule 12(c) after the pleadings are closed. *Westcott*, 901 F.2d at 1488. That distinction aside, a court reviews a Rule 12(c) motion under the same standard that

governs a Rule 12(b)(6) motion. *Id*.; *accord Spagna v. Phi Kappa Psi, Inc.*, 30 F.4th 710, 715 (8th Cir. 2022) ("We review the grants of motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) and motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) applying the same standard.").

As to those standards, the typical grounds for Rule 12(b)(6) and 12(c) motions are the insufficiency of the factual allegations offered to state claims. To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, "'threadbare recitals of the elements of a cause of action' cannot survive a [Rule 12(b)(6)] motion to dismiss." *Du Bois v. Bd. of Regents of Univ. of Minnesota*, 987 F.3d 1199, 1205 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, as the Eighth Circuit Court of Appeals has explained, "A claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 680-83). To put it another way, a court "must determine whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. WalMart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). Thus, "[a] claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Christopherson v. Bushner,* 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). In contrast, "'[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id.* (internal quotation marks and citations omitted). The Eighth Circuit Court of Appeals has cautioned that "the complaint should

be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594.

In ruling on a Rule 12(b)(6) or 12(c) motion, a court must "accept 'the facts alleged in the complaint as true and draw[ ] all reasonable inferences in favor of the nonmovant.'" *Bauer*, 25 F.4th at 589 (citation omitted). On the other hand, "[m]ere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (internal quotation marks and citations omitted). A court also need not accept a pleader's "legal conclusions drawn from the facts." *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 755 (8th Cir. 2021).

Rule 12(b)(6) and 12(c) also permits dismissal when a claim is not cognizable under applicable law. See, e.g., *Couzens v. Donohue*, 854 F.3d 508, 517 (8th Cir. 2017) (dismissal was appropriate where Missouri did not recognize a claim for false light invasion of privacy); *Thomas v. Bd. of Regents of Univ. of Nebraska*, No. 4:20CV3081, 2022 WL 1491102, at *18 (D. Neb. May 11, 2022) (agreeing with defendant that the plaintiffs had failed to state a claim, because a disparate-impact claim is not cognizable under the Equal Protection Clause); *Freeney v. Galvin*, No. 8:19CV557, 2020 WL 229996, at *2 (D. Neb. Jan. 15, 2020) (finding the plaintiff failed to state a § 1983 claim against the manager of his private place of employment because such a claim is not cognizable where a private person is not a state actor or engaged in joint action with the state or its agents). In such cases, the plaintiff failed to state a claim that was legally cognizable as opposed to factually plausible.

*2. "Disability" within the Meaning of the ADA*

Union Pacific makes two principal arguments for dismissing Cushman's Complaint in its entirety: first, Cushman has not alleged facts sufficient to show he is "disabled" within the meaning of the ADA. Filing 26 at 1; and second, Cushman has not alleged facts sufficient to show disparate treatment. Filing 26 at 2. Because the Court agrees with Union Pacific's second argument, the Court assumes without deciding for the purpose of ruling on the Motion for Judgment on the Pleadings that Cushman adequately alleged he is "disabled" within the meaning of the ADA.

*3. Disparate Treatment Under the Americans with Disabilities Act*

The "[g]eneral rule" for disability discrimination under the ADA is that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability[.]" 42 U.S.C. § 12112(a). Section 12112(b)(6) specifies that "discriminat[ing] against a qualified individual on the basis of disability" includes "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability[.]"

Both of Cushman's claims are for disparate treatment. Filing 1 at 11–13 (¶¶ 49–63). The Supreme Court has "consistently recognized a distinction between claims of discrimination based on disparate treatment and claims of discrimination based on disparate impact." *Raytheon Co v. Hernandez*, 540 U.S. 44, 52 (2003). "Both disparate-treatment and disparate-impact claims are cognizable under the ADA," but the claims are distinct. *Id.* at 53. Accordingly, the Supreme Court admonished that "courts must be careful to distinguish between these theories." *Id.* The Supreme Court explained that "disparate treatment . . . is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or other protected characteristic." *Id.* (cleaned up). Disparate-treatment claims require "evidence of the employer's subjective intent to discriminate" and "depend on whether the

9

protected trait . . . actually motivated the employer's decision." *Id.* at 52–53 (cleaned up). The Eighth Circuit has elaborated: "In a disparate treatment case, the plaintiff must basically prove that he is a member of a protected class and that the defendant treated him less favorably than similarly situated non-minority employees in circumstances from which intentional discrimination can be inferred." *Hervey v. City of Little Rock*, 787 F.2d 1223, 1231 (8th Cir. 1986). The prima facie case for disparate treatment based on disability requires showing "(1) that the plaintiff was disabled within the meaning of the ADA; (2) that the plaintiff was qualified to perform the essential functions of the job with or without a reasonable accommodation; and (3) a causal connection between an adverse employment action and the disability." *Lipp v. Cargill Meat Solutions Corp.*, 911 F.3d 537, 544 (8th Cir. 2018) (cleaned up).

The Supreme Court and the Eighth Circuit have "long recognized that a party may prove intentional discrimination under the ADA either by direct or indirect evidence." *Lipp*, 911 F.3d at 543 (internal quotations and citations omitted); *see also Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 213 (2015). The Supreme Court has stated that "a plaintiff can prove disparate treatment . . . by direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic." *Young*, 575 U.S. at 213. This Court concludes that a policy that "relies expressly" on disability classifies by disability, *i.e.*, such a policy is facially discriminatory. *Id.* The Eighth Circuit has defined "direct evidence" somewhat differently as evidence "which shows a strong causal connection between the alleged discriminatory animus and the adverse employment action." *Smothers v. Rowley Masonic Assisted Living Cmty., LLC*, 63 F.4th 721, 727 (8th Cir. 2023). For example, the Eighth Circuit has explained that "[d]irect evidence can be circumstantial in nature and includes evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory

attitude." *Id.* (internal quotations and citation omitted). The evidence "must be sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Id.* (internal quotations and citation omitted).

A plaintiff may also "show disparate treatment through indirect evidence . . . through application of the *McDonnell Douglas* framework," which first "requires a plaintiff to make out a prima facie case of discrimination." *Young*, 575 U.S. at 228. Making out the prima facie case requires "showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion." *Id.* The Eighth Circuit has elaborated on the elements of a prima facie discrimination claim based on indirect evidence:

> Under the *McDonnell Douglas* framework, [an employee must show] the first three elements of a prima facie case of discrimination: (1) she is a member of a protected class; (2) she was qualified for her position and performing adequately; and (3) she suffered adverse employment actions. . . . [T]he fourth element [requires a] showing that the circumstances of these actions gave rise to an inference of discrimination. She may do so by presenting evidence of pretext. A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision.

*Smothers*, 63 F.4th at 728 (internal quotations and citation omitted).

4. Disparate Treatment Under 42 U.S.C. § 12112(b)(6)

The Court begins with Count II of the Complaint because it has already addressed identical claims in several other cases. *Brundy v. Union Pac. R.R. Co.*, No. 23cv238, 2023 WL 6621112 (D. Neb. Oct. 11, 2023); *Carlton v. Union Pac. R.R. Co.*, No. 23cv211, 2023 WL 6388021 (D. Neb. Sept. 29, 2023); *Davis v. Union Pac. R.R. Co.*, No. 23cv273, 2023 WL 6803909 (D. Neb. Oct. 11, 2023); *Hower v. Union Pac. R.R. Co.*, No. 23cv206, 2023 WL 6804026 (D. Neb. Oct. 11, 2023). Count II of the Complaint seeks relief for disability discrimination under 42 U.S.C. § 12112(b)(6).

Filing 1 at 12–13 (¶¶ 57–63). Specifically Count II seeks relief on a disparate-treatment theory of liability for disability discrimination under § 12112(b)(6), which prohibits "discriminat[ing] against a qualified individual on the basis of disability . . . using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability[.]" See Filing 1 at 13 (¶ 60) ("Union Pacific discriminated against Cushman on the basis of disability by using facially discriminatory qualification standards, employment tests, and/or other selection criteria, as part of its Fitness-For-Duty program and related policies, that are intended to screen out individuals with disabilities, and which did screen out Cushman.").

Union Pacific refers the Court to its previous orders in the four above-cited cases which disposed of former *Harris* plaintiffs' claims under the same theory. Filing 26 at 2. In his Brief in Opposition to Union Pacific's Motion for Judgment on the Pleadings, Cushman merely stated that he "has alleged discrimination" which includes "using qualifications standards . . . that screen out . . . an individual with a disability." Filing 27 at 12 (citing 42 U.S.C. § 12112(b)(6)). In Reply, Union Pacific argues, "Cushman all but concedes that he has not adequately pled facts that would support a disparate treatment claim under § 12112(b)(6). In fact, his opposition brief does not address this issue or attempt to explain why this case is somehow factually different than *Brundy*, *Carlton*, *Davis*, or *Hower*." Filing 34 at 8. The Court agrees with Union Pacific that Cushman has waived opposition to dismissal of Count II by failing to "meaningfully argue the point." *See, e.g.*, *Nesse as Trustees of Minnesota Laborers Health & Welfare Fund v. Green Nature-Cycle*, LLC, 7 F.4th 769, 781 (8th Cir. 2021) ("For the first time on appeal, Green Nature argues that the Trustees were in privity because they were a "beneficiary" of the audit. Green Nature cites no authority in support of this proposition. Because Green Nature did not make this argument to the district court

and does not meaningfully argue the point to this Court, the argument is waived."). Therefore, the Court dismisses Count II of the Complaint.

  5. *Disparate Treatment Under 42 U.S.C. § 12112(a)*

Count I asserts a claim under 42 U.S.C. § 12112(a), alleging that "Union Pacific discriminated against Cushman on the basis of disability by, among other things, removing him from service because of a disability." Filing 1 at 12 (¶ 55). Union Pacific contends that the Court "has effectively already decided this motion in four earlier cases," cited above. Filing 26 at 2. Union Pacific asserts that Cushman's § 12112(a) disparate treatment claim is based on the same operative facts as his § 12112(b)(6) claim. Filing 26 at 2. Accordingly, Union Pacific argues that "[b]ecause Cushman raises no allegations to suggest Union Pacific's 'subjective intent to discriminate,' his § 12112(a) claim suffers the same fatal deficiency as his and the other plaintiffs' § 12112(b)(6) claim." Filing 26 at 2–3.

Cushman responds that his Complaint "alleged that Defendant acted on the basis of [Cushman's] disability." Filing 27 at 12. Cushman argues, "Defendant's counterarguments are based on an incorrect understanding of the causation standard for disparate treatment claims. Contrary to Defendant's understanding, intentional discrimination does not require a showing of hostility or ill feeling." Filing 27 at 13 (citing *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1745-46 (2020)). Cushman contends, establishing discrimination requires "only that the employer [has] taken the adverse action because of the plaintiff's disability." Filing 27 at 13. Union Pacific disputes that Cushman alleged Union Pacific "acted on the basis of his disability," stating that Cushman "has already admitted that Union Pacific did not take action 'because of' the health condition, but instead the 'sudden incapacitation risks' associated with it." Filing 34 at 9 (citing Filing 1 at 8–9 (¶ 36).

13

The Court disagrees with Cushman's contention that he alleged Union Pacific removed him from service because of his syncope. Regarding this alleged disability, Cushman merely alleges that "[a]fter losing consciousness, Cushman was seen in a hospital and diagnosed with syncope." Filing 1 at 8 (¶ 34). However, he does not allege that Union Pacific terminated him because of that diagnosis. To the contrary, Cushman alleged that Union Pacific's doctor decided "that Cushman 'requires permanent work restrictions for sudden incapacitation risks'" and that Union Pacific "based this decision, at least in part, on a determination . . . [to] label[ ] Cushman as having a 'moderate to high' risk of sudden incapacitation." Filing 1 at 8–9 (¶¶ 36–37). Cushman's Complaint never connects an increased risk of future sudden incapacitation—Cushman's asserted reason for his termination—with syncope, his alleged disability. *See Morriss*, 817 F.3d at 1113 ("[T]he ADA does not prohibit an employer from acting on some other basis, *i.e.*, on its assessment that although no physical impairment currently exists, there is an unacceptable risk of a future physical impairment."). Future risk of incapacitation is not "a presently existing 'physical impairment' as that term is defined under the Act." *Id.* Therefore, the Court agrees with Union Pacific that Cushman alleged discrimination due to a future risk of incapacitation—which does not on its own constitute a "disability" under Eighth Circuit caselaw—rather than due to his diagnosis of syncope. Cushman failed to allege "a causal connection between an adverse employment action and the disability," syncope. *Lipp*, 911 F.3d at 544. Accordingly, because the Complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Far E. Aluminium Works Co.*, 27 F.4th at 1364, Union Pacific is entitled to judgment on the pleadings.

*6. Summary*

The Court grants Union Pacific's Motion for Judgment on the Pleadings, Filing 25, on Cushman's original Complaint. Regarding Count I, Cushman's disparate-treatment claim under 42 U.S.C. § 12112(a) fails because Cushman failed allege that his purported disability rather than a future risk of incapacitation caused his termination. Regarding Count II, Cushman's waived opposition to dismissing his disparate-treatment claim under 42 U.S.C. § 12112(b)(6) by failing to argue against it. The Court also notes another reason for granting judgment on the pleadings: as discussed below, Cushman is entitled to file an Amended Complaint that may cure some of the deficiencies identified by Union Pacific in his original Complaint.

### B. Motion to Amend Complaint

In conjunction with his Brief in Opposition to Summary Judgment, Cushman filed a Motion for Leave to Amend, Filing 29, which included a copy of his proposed First Amended Complaint, Filing 31-1. Cushman argues that Rules 15(a) and 16(b) govern the Motion to Amend. Filing 30 at 3–4. Cushman contends that he satisfies the "good cause" requirement of Rule 16(b) "to modify the Final Progression Order to allow Cushman's motion to amend because Cushman has been diligent in seeking amendment and Defendant will not be prejudiced by the modification." Filing 30 at 4. Cushman further argues that leave to amend should be granted "because there has been no undue delay, bad faith, dilatory motive, previous amendment, or undue prejudice, and amendment would not be futile." Filing 30 at 6. Union Pacific responds that granting Cushman's Motion to Amend Complaint would be futile because his proposed First Amended Complaint still fails to establish Cushman's status as "disabled" under the ADA and alternatively because it fails to suggest intentional discrimination. Filing 35 at 4–13.

Rule 16(b) states that district courts "must issue a scheduling order" that "limit[s] the time to . . . amend the pleadings," and that a scheduling order "may be modified only for good cause." Fed. R. Civ. P. 16(b). "When a party seeks to amend a pleading after the scheduling deadline for doing so, the application of Rule 16(b)'s good-cause standard is not optional." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) (quoting *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)). "To permit district courts to consider motions to amend pleadings under Rule 15(a) without regard to Rule 16(b) 'would render scheduling orders meaningless and effectively ... read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.'" *Id.* The Eighth Circuit has explained good-cause standard for granting leave to amend under Rule 16(b):

> "'The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements.'" [*Sherman*, 532 F.3d at 716] (quoting *Rahn v. Hawkins,* 464 F.3d 813, 822 (8th Cir.2006)). We generally "will not consider prejudice [to the nonmovant] if the movant has not been diligent in meeting the scheduling order's deadlines." *Id.* at 717. Instead, we "focus in the first instance (and usually solely) on the diligence of the party who sought modification of the order." *Id.* Where there has been "no change in the law, no newly discovered facts, or any other changed circumstance ... after the scheduling deadline for amending pleadings," then we may conclude that the moving party has failed to show good cause. *Id.* at 718.

*Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012) (alterations in original).

Rule 15(a) provides that, when a party seeks to amend its pleading not as of right, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "A district court may deny leave to amend 'if there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue

16

prejudice to the non-moving party, or futility of the amendment.'" *Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013) (quoting *Sherman*, 532 F.3d at 715).

The Court concludes that Cushman has demonstrated the requisite "good cause" to amend his Complaint after the scheduling deadline. The scheduling deadline was set by the Final Progression Order, Filing 16, which set "[t]he deadlines for moving to amend pleadings" at September 15, 2023. On September 29, 2023, the Court published *Carlton*, 2023 WL 6388021, which dealt with a former-*Harris* plaintiff whose complaint was remarkably similar to Cushman's, including nearly identical causes of action. On October 18, 2023, Union Pacific, which had already filed an answer to Cushman's Complaint over four months earlier, Filing 10, filed its Motion for Judgment on the Pleadings, Filing 25. On November 8, 2023, in conjunction with his Brief opposing Union Pacific's Motion for Judgment on the Pleadings, Filing 27, Cushman filed his Motion to Amend Complaint, Filing 29. Publication of *Carlton*, 2023 WL 6388021, and Union Pacific's Motion for Judgment on the Pleadings, which relied heavily on that order, constituted "changed circumstance[s]." *Sherman*, 532 F.3d at 716. The Court also finds that Cushman was reasonably "diligence in attempting to meet the order's requirements." *Id.*

In addition, the Court concludes that Cushman is entitled to leave to amend his Complaint under Rule 15. Although Union Pacific argues that amendment would be futile, Filing 35 at 4–13, the Court finds that Cushman's First Amended Complaint may fix the pleading deficiencies that led to dismissal of Cushman's original Complaint. Union Pacific does not argue that any other grounds justify denying Cushman leave to amend. *See generally* Filing 35. Accordingly, the Court grants Cushman's Motion to Amend Complaint. The Court does not decide now whether the First Amended Complaint is similarly subject to dismissal, and Union Pacific may of course challenge any amended pleadings.

### III. CONCLUSION

For these reasons, the Court grants Union Pacific's Motion for Judgment on the Pleadings. Cushman's Complaint fails to allege that Union Pacific discriminated against him because of a disability. The Court also grants Cushman's Motion to Amend Complaint because Cushman has shown good cause and that amendment may not be futile. Cushman has 14 days from the date of this Order to file an Amended Complaint. Accordingly,

IT IS ORDERED:

1. Defendant Union Pacific's Motion for Judgment on the Pleadings, Filing 25, is granted; and

2. Plaintiff Cushman's Motion to Amend Complaint, Filing 29, is granted.

Dated this 27th day of December, 2023.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge