IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MICHAEL CUSHMAN,<br><br>Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>Defendant. | NO. 8:23-CV-196<br><br><br>**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT** |

Plaintiff Michael Cushman has sued his former employer defendant Union Pacific Railroad Company under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* Filing 46. The Court previously dismissed Cushman's original Complaint but granted him leave to amend. Filing 45. Presently before the Court is Union Pacific's Motion to Dismiss Cushman's Amended Complaint. Filing 47. Cushman alleges he is a former member of the now-decertified *Harris* class that sued Union Pacific for violations under the ADA. Filing 46 at 12 (¶¶ 54–55); *Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030 (8th Cir. 2020). Cushman brings two claims under the ADA against Union Pacific alleging disability discrimination due to disparate treatment. Filing 46 at 13–15 (¶¶ 58–72). For the reasons stated below, the Court grants in part and denies in part Union Pacific's Motion to Dismiss.

1

## I. INTRODUCTION

### A. Factual Background

The Court considers the following nonconclusory allegations as true for the purposes of ruling on this motion. See *Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)). Michael Cushman worked for Union Pacific between February 9, 1999, and August 3, 2015, most recently as a locomotive engineer. Filing 46 at 8 (¶¶ 30–31), 9 (¶ 39). On August 3, 2015, Cushman fainted while on the job and was subsequently diagnosed with "neurocardiogenic syncope," also known as "vasovagal syncope." Filing 46 at 8 (¶¶ 32–33). Cushman explains, "Neurocardiogenic syncope is an impairment in which the regulation of heart rate and blood pressure malfunctions in response to some trigger." Filing 46 at 8 (¶ 34). This condition caused Cushman to faint on two previous occasions, in 1999 and in 2007. Filing 46 at 8 (¶ 35). Since his diagnosis, "Cushman was prescribed medication[ ] and learned various techniques to prevent further lost-of-consciousness [sic] episodes," and he has not fainted since. Filing 46 at 8–9 (¶¶ 36–37). Cushman alleged that his condition "is completely controlled." Filing 46 at 9 (¶ 38). Immediately after Cushman fainted on the job, Union Pacific removed him from work. Filing 46 at 9 (¶ 39).

By November 2015, several of Cushman's personal doctors had cleared him to return to work without restrictions. Filing 46 at 8 (¶ 35). However, on December 16, 2015, Union Pacific made a Fitness-For-Duty (FFD) determination that Cushman "require[d] permanent work restrictions for sudden incapacitation risks." Filing 46 at 9 (¶ 41). Cushman included a copy of the FFD Memorandum with his Complaint. Filing 46-2 (Ex. B). The FFD Memorandum stated that Union Pacific's neurology consultant "agrees with [ ] Mr. Cushman's cardiologists that he has neurocardiogenic syncope." Filing 46-2 at 2; *see also* Filing 46-2 at 3 ("There is no disagreement

2

between [Cushman's] doctors and [Union Pacific's doctors] in terms of diagnosis."). The Memo further stated that "for a person in a safety critical position, such as [Cushman], the confirmed diagnosis of neurocardiogenic syncope requires permanent work restrictions for Sudden Incapacitation, due to an ongoing increased risk for future syncope even with optimal treatment." Filing 46-2 at 2. Even though "Cushman's cardiologist . . . though[t] [treatment] reduced his risk of a future episode to a low level," Union Pacific determined "that a person with neurocardiogenic syncope had a permanent unacceptable risk for sudden incapacitation (from recurrent syncope), and that there was not treatment that would reduce this risk to an acceptable level." Filing 46-2 at 3. Cushman also included with his Complaint what appears to be a health insurance form filled out by a Union Pacific doctor, stating, "I certify that Michael Cushman has been disabled from performing his/her regular occupation from 8/4/15 (Date) to Permanent (Date) due to the following condition(s): neurocardiogenic syncope." Filing 46-3 (underlining indicates handwriting).

  Union Pacific then terminated Cushman, notifying him that Union Pacific "has been unable to identify a reasonable accommodation" that would allow Cushman to continue working. Filing 46 at 11 (¶ 48). Despite this, Cushman alleges that, "[a]t all relevant times, [he] had the requisite skill, experience, education, and other job-related requirements of his position" and "could perform the essential functions of his position with or without reasonable accommodations." Filing 46 at 13 (¶ 61). Cushman also alleged that no "doctor affiliated with Union Pacific physically examine[d] Cushman." Filing 46 at 11 (¶ 47). Only in 2019 was Cushman permitted to return to work. Filing 46 at 12 (¶ 52). Cushman alleges, "Union Pacific discriminated against Cushman on the basis of disability by, among other things, removing him from service for years because of a disability." Filing 46 at 12 (¶ 55).

Cushman also alleges that he experienced disability discrimination due to Union Pacific's FFD policy. Filing 46 at 13–14 (¶ 64). The FFD policy applies "to all Union Pacific employees across the country." Filing 46 at 3 (¶ 9). "Fitness for Duty" is defined in Union Pacific's Medical Rules as "[a]bility to medically and functionally (including physical, mental, and/or cognitive function) safely perform the functions of a job, with or without reasonable accommodations and meet medical standards established by regulatory agencies in accordance with federal and/or state laws." Filing 46-1 at 12. The FFD policy requires that "[i]f the employee experiences a [reportable] health event . . . , the employee should not report for, or perform, his/her job until Fitness-for-Duty clearance has been provided for such work by [Union Pacific's Health and Medical Services Department (HMS)]." Filing 46-1 at 3. "Reportable health events" include diabetes, a "seizure of any kind," heart attacks, and "[n]ew use of hearing aids." Filing 46-1 at 13 (listing categories of conditions as "Cardiovascular," "Seizure or Loss of Consciousness," "Significant Vision or Hearing Change," "Diabetes Treated with Insulin," and "Severe Sleep Apnea"). The employee must also "[p]rovid[e], upon request, information from the employees [sic] health care provider." Filing 46-1 at 3. After receiving an employee's medical records, HMS "conducts a 'file review' and issues a Fitness-for-Duty determination that the employee is either fit for duty, fit for duty with restrictions, or unfit for duty." Filing 46 at 5 (¶ 17).

HMS relies on the Federal Motor Carrier Safety Administration (FMCSA) 2014 Medical Examiner's Handbook to conduct FFD Evaluations, specifically "to determine which health conditions required work restrictions, which standard restrictions to impose, and how long those restrictions should remain in place." Filing 46 at 6 (¶ 21). Cushman alleges that the Handbook "did not apply to railroad workers, but instead provided non-binding guidance to FMCSA medical examiners intended for use in medical certification of drivers operating a commercial vehicle in

4

interstate commerce." Filing 46 at 6 (¶ 23). He also alleges that, by 2015, HMS "learned" that the Handbook was "outdated" but continued to rely on it in its Medical Rules. Filing 46 at 6 (¶ 25).

### B. Procedural Background

Prior to this suit, Cushman alleges that he was a class member in a class action suit (*Harris*) against Union Pacific alleging disability discrimination under the ADA. Filing 46 at 12 (¶ 54). An Amended Complaint was filed on behalf of the class in the District Court for the Western District of Washington on February 19, 2016. Filing 46 at 12 (¶ 54); *Harris v. Union Pacific R.R. Co.*, No. 16-381 (D. Neb. Feb. 19, 2016), ECF No. 20. The Amended Complaint described the class as:

> Individuals who were removed from service over their objection, and/or suffered another adverse employment action, during their employment with Union Pacific for reasons related to a Fitness-for-Duty evaluation at any time from 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination to the resolution of this action.

Case No. 16-381, ECF No. 20 at 17 (¶ 116). Among the many Counts asserted in the Amended Complaint were a disparate-treatment claim pursuant to 42 U.S.C. § 12112(a) and (b)(6), a disparate-impact claim pursuant to 42 U.S.C. § 12112(b)(6) and (b)(3), an unlawful-medical-inquiries claim pursuant to 42 U.S.C. § 12112(d)(4)(A), and a failure-to-accommodate claim pursuant to 42 U.S.C. § 12112(b)(5)(A). Case No. 16-381, ECF No. 20 at 21–25 (¶¶ 136–163).[1] The case was then transferred to this Court. Case No. 16-381, ECF No. 51 at 3.

The *Harris* plaintiffs sought class certification for their disparate-treatment claim but not on their disparate-impact, unlawful-medical-inquiries, or failure-to-accommodate claims before a different judge of this Court. Case No. 16-381, ECF No. 241 at 22. When seeking certification, the plaintiffs described the class as "[a]ll individuals who have been or will be subject to a fitness-for-

---

[1] The plaintiffs in *Harris* brought other claims, *see* Case No. 16-381, ECF No. 20, but only their ADA claims are of interest in Cushman's lawsuit.

5

duty examination as a result of a reportable health event at any time from September 18, 2014 until the final resolution of this action." Case No. 16-381, ECF No. 240 at 1. The class was certified in February 2019. *See* Case No. 16-381, ECF No. 307; *Harris v. Union Pac. R.R. Co.*, 2020 WL 4504392, at *1 (D. Neb. Aug. 5, 2020). The Eighth Circuit Court of Appeals reversed and decertified the class on March 24, 2020. *Harris*, 953 F.3d 1030. Cushman promptly filed a charge of discrimination with the EEOC on April 10, 2020, and the EEOC issued a right-to-sue letter on April 10, 2023. Filing 46 at 11 (¶ 48). Cushman filed a Complaint against Union Pacific with the Court on May 15, 2023. Filing 46.

Cushman alleges two counts of disability discrimination on disparate-treatment theories under the ADA. Count I asserts a claim under 42 U.S.C. § 12112(a), alleging that "Union Pacific discriminated against Cushman on the basis of disability by, among other things, removing him from service because of a disability." Filing 46 at 13–14 (¶ 64). Count II asserts a claim under § 12112(b)(6), alleging:

> Union Pacific discriminated against Cushman on the basis of disability by using facially discriminatory qualification standards, employment tests, and/or other selection criteria, as part of its Fitness-For-Duty program and related policies, that are intended to screen out individuals with disabilities, and which did screen out Cushman.

Filing 46 at 14 (¶ 69). In his prayer for relief, Cushman asks for monetary damages and other forms of relief, including an injunction to enjoin Union Pacific's policies. Filing 46 at 15–16.

On June 7, 2023, Union Pacific filed an Answer. Filing 460. On October 18, 2023, Union Pacific filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), seeking dismissal of the Complaint in its entirety for failure to allege sufficient facts upon which relief can be granted. Filing 25. On November 8, 2023, Cushman filed a Motion to Amend Complaint. Filing 29. The Court granted both of these Motions on December 27, 2023. Filing 45.

Cushman filed his Amended Complaint on December 28, 2023. Filing 46. On January 9, 2024, Union Pacific filed the Motion to Dismiss that is presently before the Court.

## II. ANALYSIS

### A. Preliminary Matter

Despite Union Pacific's characterization of its Motion as one for judgment on the pleadings under Rule 12(c), it is properly characterized as a motion to dismiss for failure to state a claim under Rule 12(b)(6). "Generally, an amended complaint supercedes an original complaint and renders the original complaint without legal effect." *Schlafly v. Eagle F.*, 970 F.3d 924, 933 (8th Cir. 2020) (quoting *Acuity v. Rex, LLC*, 929 F.3d 995, 999 (8th Cir. 2019)). Union Pacific's answer to the superseded original Complaint, Filing 10, is also without legal effect, meaning the Motion presently before the Court is pre-answer. Judgment on the pleadings (not pleading) is inappropriate pre-answer. *See Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 322 (3d Cir. 2015) (contrasting "post-answer Rule 12(c) motion[s]" with "pre-answer motion[s]"). Thus, the Court will refer to Union Pacific's Motion as a Motion to Dismiss.

### B. Rule 12(b)(6) Standards

The typical grounds for Rule 12(b)(6) motions are the insufficiency of the factual allegations offered to state claims. To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, "'threadbare recitals of the elements of a cause of action' cannot survive a [Rule 12(b)(6)] motion to dismiss." *Du Bois v. Bd. of Regents of Univ. of Minnesota*, 987 F.3d 1199, 1205 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, as the Eighth Circuit Court of Appeals has explained, "A claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but

7

'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 680-83). To put it another way, a court "must determine whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminium Works Co. v. Viracon, Inc*., 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. WalMart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). Thus, "[a] claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Christopherson v. Bushner,* 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). In contrast, "'[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id.* (internal quotation marks and citations omitted). The Eighth Circuit Court of Appeals has cautioned that "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594.

In ruling on a Rule 12(b)(6) motion, a court must "accept 'the facts alleged in the complaint as true and draw[ ] all reasonable inferences in favor of the nonmovant.'" *Bauer*, 25 F.4th at 589 (citation omitted). On the other hand, "[m]ere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." *Richardson v. BNSF Ry. Co*., 2 F.4th 1063, 1068 (8th Cir. 2021) (internal quotation marks and citations omitted). A court also need not accept a pleader's "legal conclusions drawn from the facts." *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 755 (8th Cir. 2021).

Rule 12(b)(6) also permits dismissal when a claim is not cognizable under applicable law. See, e.g., *Couzens v. Donohue*, 854 F.3d 508, 517 (8th Cir. 2017) (dismissal was appropriate where

8

Missouri did not recognize a claim for false light invasion of privacy); *Thomas v. Bd. of Regents of Univ. of Nebraska*, No. 4:20CV3081, 2022 WL 1491102, at *18 (D. Neb. May 11, 2022) (agreeing with defendant that the plaintiffs had failed to state a claim, because a disparate-impact claim is not cognizable under the Equal Protection Clause); *Freeney v. Galvin*, No. 8:19CV557, 2020 WL 229996, at *2 (D. Neb. Jan. 15, 2020) (finding the plaintiff failed to state a § 1983 claim against the manager of his private place of employment because such a claim is not cognizable where a private person is not a state actor or engaged in joint action with the state or its agents). In such cases, the plaintiff failed to state a claim that was legally cognizable as opposed to factually plausible.

### C. "Disability" within the Meaning of the ADA

Union Pacific does not argue that Cushman's alleged neurocardiogenic syncope falls outside the scope of a "disability" within the meaning of the ADA. *See generally* Filing 47; Filing 48. In its previous ruling in this case, "the Court assume[d] without deciding for the purpose of ruling on the Motion for Judgment on the Pleadings that Cushman adequately alleged he is 'disabled' within the meaning of the ADA." Filing 45 at 9. Because Union Pacific does not at present challenge Cushman's "disabled" status, the Court again assumes without deciding for the purpose of ruling on this Motion that Cushman has a "disability" within the meaning of the ADA.

### D. Disparate Treatment Under the Americans with Disabilities Act

The "[g]eneral rule" for disability discrimination under the ADA is that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability[.]" 42 U.S.C. § 12112(a). Section 12112(b)(6) specifies that "discriminat[ing] against a qualified individual on

9

the basis of disability" includes "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability[.]"

Both of Cushman's claims are for disparate treatment. Filing 46 at 13–15 (¶¶ 58–72). The Supreme Court has "consistently recognized a distinction between claims of discrimination based on disparate treatment and claims of discrimination based on disparate impact." *Raytheon Co v. Hernandez*, 540 U.S. 44, 52 (2003). "Both disparate-treatment and disparate-impact claims are cognizable under the ADA." *Id.* at 53. Accordingly, the Supreme Court admonished that "courts must be careful to distinguish between these theories." *Id.* The Supreme Court explained that "disparate treatment . . . is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or other protected characteristic." *Id.* (cleaned up). Disparate-treatment claims require "evidence of the employer's subjective intent to discriminate" and "depend on whether the protected trait . . . actually motivated the employer's decision." *Id.* at 52–53 (cleaned up). The Eighth Circuit has elaborated: "In a disparate treatment case, the plaintiff must basically prove that he is a member of a protected class and that the defendant treated him less favorably than similarly situated non-minority employees in circumstances from which intentional discrimination can be inferred." *Hervey v. City of Little Rock*, 787 F.2d 1223, 1231 (8th Cir. 1986). The prima facie case for disparate treatment based on disability requires showing "(1) that the plaintiff was disabled within the meaning of the ADA; (2) that the plaintiff was qualified to perform the essential functions of the job with or without a reasonable accommodation; and (3) a causal connection between an adverse employment action and the disability." *Lipp v. Cargill Meat Solutions Corp.*, 911 F.3d 537, 544 (8th Cir. 2018) (cleaned up). The Eighth Circuit has explained that while "[t]he prima facie standard is an evidentiary standard, not a pleading standard, and there is no need to set forth

10

a detailed evidentiary proffer in a complaint," the "elements of the prima facie case are . . . part of the background against which a plausibility determination should be made" on a motion to dismiss. *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (internal citation and quotations omitted).

1. *Disparate Treatment Under 42 U.S.C. § 12112(b)(6)*

The Court begins with Count II of the Complaint because it has already addressed identical claims in several other cases. *Brundy v. Union Pac. R.R. Co*., No. 23cv238, 2023 WL 6621112 (D. Neb. Oct. 11, 2023); *Carlton v. Union Pac. R.R. Co*., No. 23cv211, 2023 WL 6388021 (D. Neb. Sept. 29, 2023); *Davis v. Union Pac. R.R. Co*., No. 23cv273, 2023 WL 6803909 (D. Neb. Oct. 11, 2023); *Hower v. Union Pac. R.R. Co*., No. 23cv206, 2023 WL 6804026 (D. Neb. Oct. 11, 2023). Count II of the Complaint seeks relief for disability discrimination under 42 U.S.C. § 12112(b)(6). Filing 46 at 14–15 (¶¶ 67–72). Specifically Count II seeks relief on a disparate-treatment theory of liability for disability discrimination under § 12112(b)(6), which prohibits "discriminat[ing] against a qualified individual on the basis of disability . . . using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability[.]" See Filing 46 at 14 (¶ 69) ("Union Pacific discriminated against Cushman on the basis of disability by using facially discriminatory qualification standards, employment tests, and/or other selection criteria, as part of its Fitness-For-Duty program and related policies, that are intended to screen out individuals with disabilities, and which did screen out Cushman."). The Court has already determined in the above mentioned cases under the similar factual allegations and the same legal theory that Union Pacific's FFD program and related policies cannot serve as evidence of disparate treatment under 42 U.S.C. § 12112(b)(6). See, e.g., *Carlton,* 2023 WL 6388021, at *18. Briefly put, the FFD program is not facially discriminatory, and there is no evidence that Union Pacific's adoption of the program—which is based on federally issued safety

11

standards—was a pretext for discrimination. The Court sees no reason to depart from its prior holdings on the exact argument Cushman now makes. Therefore, Union Pacific's Motion to Dismiss is granted as to Count II.

2. *Disparate Treatment Under 42 U.S.C. § 12112(a)*

Count I asserts a claim under 42 U.S.C. § 12112(a), alleging that "Union Pacific discriminated against Cushman on the basis of disability by, among other things, removing him from service because of a disability." Filing 46 at 13–14 (¶ 64). Union Pacific contends that this allegation fails to state a claim, explaining:

> Cushman's Amended Complaint is [ ] deficient in two interrelated ways. First, he alleges that Union Pacific made an erroneous medical decision, but does not suggest the decision was motivated by some prejudice, bias, or animus. Second, he does not even allege that the medical decision was based on any disability itself because he confirms that it was based on sudden incapacitation risks—a job-related consequence of the condition.

Filing 48 at 11. Cushman responds that he "has adequately alleged causation" for his Section 12112(a) claim. Filing 51 at 5. After all, he contends, "[d]iscriminating based on a disability's perceived safety risks is discriminating based on disability." Filing 51 at 8. Cushman further argues that he was "not required to allege 'prejudice, bias, or animus' to state a disparate treatment claim." Filing 51 at 12. In Reply, Union Pacific argues that "adverse action due to a safety risk is not synonymous with an adverse action due to a disability." Filing 52 at 6. Union Pacific also reiterates its arguments that Cushman failed to adequately allege "causation" and to allege "prejudice, bias, or animus." Filing 52 at 2, 9 (capitalization omitted).

    a. Cushman Adequately Alleged that He Was Terminated Because of His Disability

In the Court's ruling on the Motion for Judgment on the Pleadings on Cushman's original Complaint, the Court "disagree[d] with Cushman's contention that he alleged Union Pacific

12

removed him from service because of his syncope." Filing 45 at 14. Cushman's original reference to his alleged disability was that "[a]fter losing consciousness, Cushman was seen in a hospital and diagnosed with syncope." Filing 1 at 8 (¶ 34). Cushman never alleged that Union Pacific terminated him because of that diagnosis; instead, Cushman repeatedly alleged that Union Pacific "based this decision, at least in part, on a determination . . . [to] label[ ] Cushman as having a 'moderate to high' risk of sudden incapacitation." Filing 1 at 8–9 (¶¶ 36–37). The Court determined that "Cushman's Complaint never connect[ed] an increased risk of future sudden incapacitation—Cushman's asserted reason for his termination—with syncope, his alleged disability," noting that "[f]uture risk of incapacitation is not a presently existing physical impairment as that term is defined under the [ADA]." Filing 45 at 14 (citing *Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1113 (8th Cir. 2016)). Despite this, the Court concluded "that Cushman's First Amended Complaint may fix the pleading deficiencies that led to dismissal of Cushman's original Complaint," Filing 45 at 17, namely, by connecting the risk of future sudden incapacitation with his alleged disability.

  Cushman cured this defect with his Amended Complaint. The Amended Complaint includes an allegation that Union Pacific "imposed permanent work restrictions on Cushman because of his diagnosis of 'confirmed recurrent neurocardiogenic syncope.'" Filing 46 at 10 (¶ 43). Cushman provided the FFD Memo from Dr. Holland in his Amended Complaint, which states, "The FMCSA medical advisory groups state neurocardiogenic syncope is associated with a permanent unacceptable risk for recurrent syncope, and this risk cannot be adequately reduced to an acceptable risk level with treatment." Filing 46-2 at 3. The Memo further provides that "if a worker in a safety critical position had a health condition associated with a risk of sudden Incapacitation over 1% per year occurrence rate, then this would pose an unacceptable safety risk for the employee and others, and would require work restrictions." Filing 46-2 at 3. Thus, Cushman

13

alleged that the future risk of incapacitation—Union Pacific's stated reason for terminating Cushman—is inherently connected to his alleged disability.

The Court agrees with Cushman's argument that "[d]iscriminating based on a disability's perceived safety risks is discriminating based on disability." Filing 51 at 8. In *Morriss*, on which Union Pacific relies, *see* Filing 48 at 9, the Eighth Circuit stated, "[T]he ADA does not prohibit an employer from acting on some [ ] basis [other than disability], *i.e.*, on its assessment that although no physical impairment currently exists, there is an unacceptable risk of a future physical impairment." 817 F.3d at 1113. The *Morriss* court continued to state, "The ADA does not prohibit discrimination based on a perception that a physical characteristic—as opposed to a physical impairment—may eventually lead to a physical impairment as defined under the Act. Instead, the plain language of the ADA prohibits actions based on an existing impairment or the perception of an existing impairment." *Id.* Thus, the ADA makes an important distinction between risks of future physical impairment caused by a presently existing impairment and those risks caused by something else, such as "a physical characteristic." *Id. Morriss* recognized that an employer only violates the ADA by discriminating against an employee whose "unacceptable risk of a future physical impairment" is "based on . . . a presently existing 'physical impairment.'" *Id.* Conversely, an employer does not violate the ADA by discriminating against an employee whose risk of future physical impairment is caused by anything besides "a presently existing 'physical characteristic.'" *Id.* (explaining that the ADA did not prevent an employer from discriminating against an employee whose obesity—which was considered a physical characteristic rather than an impairment— caused an unacceptable risk of future incapacitation). Unlike the plaintiff in *Morriss*, Cushman alleged that his increased risk of future impairment was "based on . . . a presently existing 'physical impairment,'" neurocardiogenic syncope. *Id.*

14

Cushman adequately alleged an ADA disparate treatment claim under § 12112(a). The prima facie case for an ADA disparate treatment claim, which is "part of the background against which a plausibility determination should be made" on a motion to dismiss, *Blomker*, 831 F.3d at 1056, requires showing "(1) that the plaintiff was disabled within the meaning of the ADA; (2) that the plaintiff was qualified to perform the essential functions of the job with or without a reasonable accommodation; and (3) a causal connection between an adverse employment action and the disability." *Lipp*, 911 F.3d at 544. Union Pacific's Motion to Dismiss challenges only the "causation" prong. *See generally* Filing 48. Union Pacific's challenge fails. Cushman alleged that Union Pacific terminated him because of "a presently existing 'physical impairment,'"—neurocardiogenic syncope—even if Union Pacific's concerns about the "presently existing 'physical impairment'" were due to an "unacceptable risk of a future physical impairment," sudden incapacitation. *Id.* This allegation contains "enough specificity to raise a right to relief above the speculative level . . . to support a reasonable inference that the defendant is liable." *Richardson*, 2 F.4th at 1068.

      b. Cushman Need Not Allege Prejudice, Bias, or Animus to State a Claim Under Section 12112(a)

Union Pacific argues that in addition to "a causal connection between an adverse employment action and the disability," *Lipp*, 911 F.3d at 544, Cushman must also allege that "prejudice, bias, or animus" motivated Union Pacific to terminate Cushman. Filing 48 at 11. Accordingly, because Union Pacific's decision to terminate Cushman was not the result of "unfair and unnecessary discrimination and prejudice," Union Pacific contends that it cannot be liable for discrimination. Filing 48 at 12 (quoting 42 U.S.C. § 12101(a)(8)). Cushman contends that there is no such requirement. Filing 51 at 12. Although the caselaw is not entirely clear, the Court agrees

15

with Cushman that showing "prejudice, bias, or animus" is not required to state a claim for discrimination.

There is some support for Union Pacific's position. For example, the Eighth Circuit has stated, "Direct evidence of discrimination is that which shows a strong causal connection between the alleged discriminatory animus and the adverse employment action." *Smothers v. Rowley Masonic Assisted Living Cmty., LLC*, 63 F.4th 721, 727 (8th Cir. 2023).[2] However, the Court understands "animus" as used here to mean "motivating purpose or intention; animating spirit," rather than "strong dislike or enmity; hostile attitude; animosity," https://www.dictionary.com/browse/animus, as Union Pacific urges. Filing 48 at 11. In other words, disparate-treatment claims require a "subjective intent to discriminate," *Raytheon*, 540 U.S. at 53, but that intent does not need to include "animosity."[3] Certainly, the Court's reading is more consistent with recent Supreme Court precedent interpreting what it means to "discriminate." For example, "[i]n elaborating on the meaning of "discriminate," [the Supreme Court in *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 663 (2020)] made clear that a lack of 'animosity' is 'irrelevant' to a claim of discrimination under Title VII." *Murray v. UBS Sec., LLC*, 144 S.Ct. 445, 453 (2024) ("An animus-like 'retaliatory intent' requirement is simply absent from the definition of the word 'discriminate.'").[4] The Eighth Circuit has stated, "Disparate treatment claims under Title VII [and]

---

[2] The Court notes that "direct evidence" is not required to prove discrimination. *See Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 228 (2015) (stating that a "plaintiff may 'show disparate treatment through indirect evidence . . . through application of the McDonnell Douglas framework'").

[3] Although not required to state a disparate-treatment claim, evidence of animosity can be probative of an employer's intent to discriminate. *See Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 648 (8th Cir. 2022) ("Evidence of discriminatory animus among individuals with influence over decisionmaking *can be sufficient* for a reasonable jury to conclude discrimination was a motivating factor." (emphasis added)).

[4] On February 8, 2024, Cushman filed a Notice of Supplemental Authority to direct the Court's attention to *Murray v. UBS Sec., LLC*, 144 S.Ct. 445, 453 (2024), which was published by the Supreme Court that same day. Filing 53. Union Pacific filed an Objection to this Notice on February 12, 2024, arguing that Murray "has no bearing

the ADA . . . are analyzed in the same manner." *Evance v. Trumann Health Servs., LLC*, 719 F.3d 673, 677 (8th Cir. 2013) (quoting *St. Martin v. City of St. Paul*, 680 F.3d 1027, 1033 (8th Cir.2012))). Thus, applying the logic of *Bostock* and *Murray* to the present case, the Court concludes that "a lack of 'animosity' is 'irrelevant' to a claim of discrimination under" the ADA. *Murray*, 144 S.Ct. at 453. Accordingly, the Court agrees with Cushman that there is no requirement to plead "prejudice, bias, or animus" to state a claim for discrimination under the ADA.

Union Pacific argues that the Court's holding is tantamount to establishing that Union Pacific committed "a per se violation of the ADA." Filing 52 at 10. To the contrary, nothing in this Order establishes that Union Pacific violated the ADA. Rather, this Order simply establishes that Cushman has "state[d] a claim to relief that is plausible on its face" under 42 U.S.C. § 12112(a). *Far E. Aluminium Works Co.*, 27 F.4th at 1364. Moreover, Union Pacific can raise affirmative defenses, including that Cushman's alleged disability "pose[s] a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C. § 12113(b). EEOC regulations explain,

> Direct Threat means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation. The determination that an individual poses a "direct threat" shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job. This assessment shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence. In determining whether an individual would pose a direct threat, the factors to be considered include:
>
> (1) The duration of the risk;
>
> (2) The nature and severity of the potential harm;
>
> (3) The likelihood that the potential harm will occur; and
>
> (4) The imminence of the potential harm.

---

on the case at bar." Filing 54 at 3. The Court disagrees, finding that the Supreme Court's discussion of *Bostock* in *Murray* is probative of the issue presently before the Court. Accordingly, Union Pacific's Objection is overruled.

29 C.F.R. § 1630.2(r). Union Pacific's fears of a "per se violation" are unfounded, where the facts are not yet fully developed and the ADA provides a potential defense, and its Motion to Dismiss is denied as to Count I.

### III. CONCLUSION

For these reasons, the Court grants in part and denies in part Union Pacific's Motion to Dismiss. Cushman's Amended Complaint plausibly alleges that Union Pacific discriminated against him in violation of 42 U.S.C. § 12112(a) (Count I). However, Cushman failed to plausibly allege a disparate treatment claim under § 12112(b)(6) (Count II). Accordingly, Count II is dismissed.

IT IS ORDERED:

1. Defendant Union Pacific's Motion to Dismiss, Filing 47, is granted in part and denied in part, as set out above; and

2. Defendant Union Pacific's Objection to plaintiff Cushman's Notice of Supplemental Authority, Filing 54, is overruled.

Dated this 12th day of March, 2024.

BY THE COURT:

Brian C. Buescher
United States District Judge